### 536 A.2d 642

Fleet Pizza, Inc. t/a Domino's Pizza, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Fleet Pizza, Inc. t/a Domino's Pizza, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

S&M Pizza, Ltd., t/a Domino's Pizza, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued November 20, 1987, before Judges MAC-PHAIL and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Francis Mazzola, Dechert, Price & Rhoads,* with him, *P. J. DiQuinzio,* for petitioners.

*Kathleen Krise Shaulis,* Assistant Counsel, with her, *James W. Bruce,* Assistant Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE KALISH, March 3, 1988:

These are consolidated appeals. Petitioners, Fleet Pizza, Inc. (Fleet), t/a Domino's Pizza, and S&M Pizza Ltd. (S&M), t/a Domino's Pizza, are franchisees of Domino's Pizza, Inc. Petitioners seek review of decisions of the Board of Finance and Revenue (Board) which sustained a sales and use tax assessment against the petitioners and denied a sales and use tax refund to them. We reverse.

On March 2, 1984, the Pennsylvania Department of Revenue's (Department) auditors began a sales and use tax audit of Fleet covering the period January 1, 1981 through September 30, 1984. During the audit, the question was raised as to Fleet's obligation to collect sales tax on its delivered pizza sales. The auditors did not question that pick-up pizza sales were exempt from

sales tax. To avoid the risk of litigation, the Department, Domino's Pizza, Inc., Fleet, and the other existing Pennsylvania franchisees entered into an agreement that was effective as of July 1, 1984. Under that agreement, Domino's Pizza, Inc., Fleet, and each of Domino's Pizza, Inc.'s franchisee signatories to the agreement agreed to begin collecting sales tax on delivered pizza as of July 1, 1984, and the Department agreed not to assess sales tax against any signatory to the agreement on pizza sales delivered prior to July 1, 1984. They also agreed not to assess sales or use tax on purchases of tangible personal property and utility services used directly in the process of manufacturing pizza prior to July 1, 1984. S&M was not a party to this agreement.

Following the execution of the agreement, the Department auditors issued an assessment against Fleet in the amount of $5,187.79 plus interest and penalties. Fleet filed a petition for reassessment with the Board of Appeals requesting that the use tax assessed on equipment, including walk-in coolers, refrigerated make-lines, workstations including sinks, scales, ovens, hoods and exhaust fans, predominantly used directly in manufacturing pizza be stricken from the assessment and that penalties be abated.

The Board of Appeals determined that Fleet's refrigerated make-lines and workstations were predominantly used directly in the baking of pizza and thus excluded from use tax under the manufacturing/baking equipment exception pursuant to section 201 of the Tax Reform Code of 1971 (Act), Act of March 4, 1971, P.L. 6, *as amended,* P.S. §7201, and the bakery exclusion contained in 61 Pa. Code §§32.32, 41.1. Although the Board of Appeals determined that the refrigerated make-line and scale were directly used in baking pizza and therefore qualified as manufacturing equipment, it did not strike the use tax from the assessment on these

two items because there was a lack of documentation as to the original cost of those items and therefore the Board could not compute the tax. The Board of Appeals determined that the walk-in coolers, hoods and exhaust fans were *not* used directly in baking the pizza. The Board of Finance and Revenue sustained the Board of Appeals' decision.

S&M Pizza did not join in the agreement with the Department and did not collect sales tax on its delivered pizza sales. On July 21, 1986, the Department issued a sales and use tax assessment against S&M Pizza. The Department determined that S&M's sales of pizza which were delivered to customers were subject to Pennsylvania sales tax. The Department did not assess sales tax on pizza sales that were picked up by customers. In addition, the Department assessed a use tax on the rental payments made on leases of equipment including a walk-in cooler, a refrigerated make-line and an oven predominantly used directly in the manufacturing of pizza. S&M paid the assessment and filed a petition for refund of sales and use tax with the Board of Appeals. The Board of Appeals refused S&M's petition for refund. The Board of Finance and Revenue sustained the Board of Appeals' decision.

Petitioners contend that their delivered pizza sales are *not* subject to Pennsylvania sales tax pursuant to section 204(29) of the Act, 72 P.S. §7204(29). Petitioners also contend that their purchases and leases of equipment including walk-in coolers, refrigerated make-lines, ovens and utility services to operate said equipment are excluded from Pennsylvania sales and use tax under section 201 of the Act, 72 P.S. §7201, and 61 Pa. Code §§32.32, 41.1, because they are predominantly used directly in manufacturing a bakery product.

It was stipulated that this ethnic delicacy called pizza is prepared by petitioners from basic raw materi-

als composed of dough, tomato sauce, and toppings which are mixed together and then baked. The stipulation shows that the process involves more than just dropping a piece of dough into a pot of boiling fat. The process requires skill and expertise in the fermentation process and proper refrigerator timing in the walk-in coolers prior to the dough being formed into pizza shells. The equipment used with the operation to produce the pizza consisted of walk-in coolers, ovens, refrigerated make-lines, hoods and fans. Part of the production is the so-called refrigerated make-lines wherein the ingredients are incorporated into the pizza prior to insertion into the ovens. Improper handling can result in a complete breakdown of the gluten structure of the dough.

It was further stipulated that there is no place on the petitioners' premises where patrons can consume the pizza. No utensils such as forks, knives or napkins are furnished by petitioners. After baking, the pizza is boxed, taped and delivered by petitioners to the purchaser's home.

The Commonwealth contends that where, as here, the pizza is delivered by petitioners, the petitioners are acting as a caterer and the sale is not excluded from tax under the Act or the regulations. Furthermore, the Commonwealth contends that the petitioners are not entitled to the manufacturer's exemption, also provided in the Act.

Section 201 of the Act, 72 P.S. §7201, and the department regulations, 61 Pa. Code §49.1(b), provide that no tax shall be imposed upon the retail sale of food *except* when food purchased is from persons engaged as *caterers* or in operating restaurants, cafes, lunch counters, private or social clubs, hotels and *other eating establishments* whether the food is to be consumed on *or off the premises.*

In 61 Pa. Code §49.1(a), a "caterer" is defined as follows:

> One primarily engaged in the selling, providing or furnishing of food and beverages which are essentially fully prepared and usually ready-to-eat and which are intended for immediate consumption or consumption at a specific meal, affair or social function, usually at the premises of one other than the caterer, whether or not delivery to those premises, or food service is also provided by the caterer. . . .

Certainly petitioners are engaged in the business of making bakery products such as pies, or breads. The only difference between an apple pie baked at a bakery and a pizza baked at a pizzeria is the ingredients used.

The intent of 61 Pa. Code §49.1(a) is that the term "caterer" is to be used in its ordinary meaning, namely, for consumption at a specific meal, affair or social function and is not intended to apply to a situation where the sale of the produce is akin to a bakery sale. A caterer's method of merchandising is in the nature of a portable eating place. Petitioners' premises were anything but that. Therefore, the petitioners' sales of pizza which are delivered to customers are not subject to Pennsylvania sales tax.

The Commonwealth further contends that petitioners are not entitled to the manufacturer's exemption. In 61 Pa. Code §41.1 it is provided:

> [A] person engaged in the business of making bakery products, including perishable products such as breads, cakes, pies, pastries and the like, and semi-perishable products such as cookies, crackers, pretzels, potato chips and the like, is a manufacturer within the meaning of section 201(c) of the [act] (72 P.S. §7201(c)), and is entitled to those exemptions which are set forth in [61 Pa. Code §32.32]. . . .

In 61 Pa. Code §32.32, it is provided that equipment, machinery and supplies directly and predominantly used in the manufacturing process are exempt from the tax; that there must be a causal connection between the equipment used and the finished product; and that machinery, equipment and supplies used to transport, convey, handle or store the product from the first operation to the time the product is packaged for the ultimate consumer are considered to be directly used in the manufacturing-process operation. Here, part of the production is the so-called refrigerated make-lines wherein the ingredients are incorporated into the pizza prior to insertion into the ovens for baking. Here, there is a causal relationship between the equipment used and the finished product. Therefore, this equipment is excluded from use tax under the manufacturing/baking exemption.

Accordingly, we reverse.

## ORDER

Now, March 3, 1988, the orders of the Pennsylvania Board of Finance and Revenue, Dkt. No. RST-9311, dated May 2, 1986; Dkt. No. RST-9856, dated August 29, 1986; and Dkt. No. RST-10,157, dated October 31, 1986, are reversed, and the chief clerk is directed to enter judgment after thirty (30) days unless exceptions are filed.